IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–02920–MDB

D.L.F,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

# ORDER

Plaintiff D.L.F.[1] ["Plaintiff"] brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Commissioner of the Social Security Administration ["Commissioner"], denying his application for Supplemental Security Income. (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff has replied. (["Opening Brief"], Doc. No. 16; ["Response"], Doc. No. 22; ["Reply"], Doc. No. 23.) The Commissioner has also filed the Administrative Record. (["AR"], Doc. No. 11.) After carefully analyzing the briefs, the Administrative Record, and relevant law, the Court **AFFIRMS** the Commissioner's final decision.

---

[1] Pursuant to Local Rule, D.C.COLO.LAPR 5.2(b), Plaintiff D.L.F. is identified by his initials only.

# BACKGROUND[2]

Plaintiff was born on December 1, 1999, and was 18 years old on his alleged disability onset date (AR 103). He has a high school education and a prior part-time work history in retail service and food service (AR 282). He last worked in 2019 (AR 281).

Plaintiff applied for Supplemental Security Income on January 8, 2020. (AR 263.) The Commissioner denied Plaintiff's claim on July 16, 2020. (AR 139–41.) The Commissioner denied Plaintiff's request for reconsideration on December 18, 2020. (AR 148–60.) Plaintiff then successfully requested a hearing before an administrative law judge ["ALJ"], which occurred on February 23, 2022. (AR 75–101.) Plaintiff was accompanied at the hearing by his attorney. (AR 75.) The ALJ heard testimony from Plaintiff, as well as his father, Steve Falcon, and a vocational expert, Connie Hill. (AR 75–101.) On March 16, 2022, the ALJ issued a written decision denying benefits, and on September 22, 2022, the Appeals Counsel denied Plaintiff's request for review. (AR 1–6, 54–74.) Plaintiff then filed the instant appeal. (Doc. No. 1.)

During the February 2022 hearing, Plaintiff testified that he usually had three or four seizures a month. (AR 82.) These were generally "partial complex seizures," but Plaintiff occasionally suffered "grand mal seizures ... once every two months or so." (AR 82, 83.) The seizures often clustered, and Plaintiff testified he sometimes had two or three other seizures "around" the initial seizure. (*Id.*) Plaintiff testified that "everything goes blank" for a "minute or two" during both types of seizures. (AR 82–83.) He further stated it took "about two days" to recover from the fatigue associated with a seizure. (AR 84.) Plaintiff testified that he limits his

---

[2] The following background focuses only on the elements of Plaintiff's history that are relevant to the Court's analysis.

"work or physical activity" to avoid seizures, saying that after "an hour or two ... it completely falls off for me energy-wise." (AR 85, 84–85.) Plaintiff stopped drinking alcohol due to a possible connection with his seizures. (AR 88.) Plaintiff also said his seizure-prevention medication "definitely decreases [his] energy and appetite heavily," made his "mind feel foggy," and "decreases [his] memory a lot." (AR 85.) Plaintiff said he napped "two to three" times per day, usually for "about an hour or two. (AR 85–86.)

At the first step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 20, 2019. (AR 59.) At the second step, the ALJ determined that Plaintiff lives with the "severe impairments of seizure disorder; status-post ganglioglioma of brain and resection, obesity, depression, and anxiety." (*Id.*)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. (AR 59–61.) With regard to Plaintiff's seizures, ALJ determined:

> [t]he claimant's seizures do not meet or equal the requirements of listing 11.02. The record does not establish the required number of seizures despite adherence to prescribed treatment; and a marked limitation in one of the following: 1. Physical functioning; or 2. Understanding, remembering, or applying information; or 3.Interacting with others; or 4. Concentrating, persisting, or maintaining pace; or 5. Adapting or managing oneself.

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax* v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

(AR 60.)

Because she concluded that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ was required to determine Plaintiff's residual functional capacity ("RFC"). The ALJ determined that Plaintiff has the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: must avoid all exposure to hazards; never climb ladders, ropes, and scaffolds; limited to understanding, remembering and concentrating to carry out simple routine tasks with occasional work interactions with coworkers and supervisors and no work interactions with the public; and can adapt to occasional changes in a routine work setting

(AR 61, 61–67.) In establishing this RFC, the ALJ determined "the claimant's medically determinable impairments could reasonably be expected to cause some" of the symptoms Plaintiff testified to. (AR 63.) "However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) The ALJ then conducted a detailed review of the record, including Plaintiff's medical records and treatment history, as well as the opinions of various experts, explaining this finding. (AR 63–68.)

At step four, the ALJ determined Plaintiff did not have any past relevant work experience. (AR 68.) At step five, the ALJ determined there are jobs that exist in significant numbers in the national economy that the claimant can perform based on his age, education, work experience, and RFC. (AR 28.) Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Act, and denied his applications for benefits. (AR 69.)

**STANDARD OF REVIEW**

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). Any conflict in the evidence is to be resolved by the ALJ, and not the court. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Plaintiff raises two issues on appeal. First, Plaintiff argues the ALJ's determination at step three (that Plaintiff did not meet the criteria of disability listing 11.02) was legal error and not supported by substantial evidence. (Doc. No. 16 at 5–13.) Second, Plaintiff argues the ALJ erred in her evaluation of Plaintiff's subjective symptom testimony. (*Id.* at 13–16.)

I.     **The ALJ's Step Three Analysis**

Plaintiff argues the ALJ erred in her evaluation of Plaintiff's seizure disorder at step three. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity."). Specifically, Plaintiff contends the ALJ "misstates the listing criteria for [l]isting 11.02, Epilepsy." (Doc. No. 16 at 6.) Plaintiff goes on to argue the ALJ failed to properly articulate and support her step three listing 11.02 analysis. (*Id.* at 7–8) Finally, Plaintiff asserts the ALJ "erred when she did not discuss the substantial medical evidence" demonstrating Plaintiff's seizures were frequent enough to meet the Listing's criteria." (*Id.* at 8–13.)

a. The Sufficiency of the ALJ's Step Three Analysis

Under listing 11.02, a claimant is disabled if they provide evidence showing (A) "Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment"; or (B) "Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Disability Evaluation Under Social Security – 11.00 Neurological – Adult*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm#1_1_02 (cleaned up). If a claimant cannot meet the frequency requirements of listing 11.02(A) or (B), they may still show disability by providing evidence of (C) "Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment;" or (D) "Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment," so long as they also demonstrate "a marked limitation in ... (1) physical functioning; or (2) understanding,

6

remembering, or applying information; or (3) interacting with others; or (4) concentrating, persisting, or maintaining pace; or (5) adapting or managing oneself." (*Id.* (cleaned up).) In other words, if a claimant cannot meet the frequency requirements of 11.02A or B, he must meet the lesser frequency requirements of 11.02C or D *and* suffer from a marked limitation in one of the five areas of functioning in order to meet listing 11.02.

In her step three analysis regarding listing 11.02, the ALJ stated, "[t]he record does not establish the required number of seizures despite adherence to prescribed treatment; and a marked limitation in one of the [five areas of functioning]." (AR 60.) Plaintiff contends the ALJ improperly *required* Plaintiff to show a marked limitation in one of the five areas of functioning listed in 11.02C and D, without noting Plaintiff could simply meet the seizure frequencies required in 11.02 A or B, without any need to show a limitation in functioning. (*Id.*) Further, Plaintiff argues the ALJ's consideration of listing 11.02 in step three was perfunctory and conclusory. For example, the ALJ did not make a specific finding as to the frequency of Plaintiff's seizures in step three, nor analyze any competing evidence. (AR 59–61.)

The Commissioner responds that the ALJ properly stated and applied listing 11.02, saying that the ALJ's finding "[t]he record does not establish the required number of seizures" referred to 11.02A and B, while her finding of no "marked limitation" in functioning referred to 11.02C and D. (Doc. No. 22 at 6–7 (citing AR 60).) The Commissioner further contends that any step three error related to the depth of the ALJ's analysis was harmless. Specifically, the Commissioner points out that, in the context of analyzing other listings in step three, the ALJ reviewed in detail "four of the five" areas of functioning relevant to listing 11.02C and D, finding no more than a "moderate limitation" in any. (Doc. No. 22 at 8 (citing AR 60–61.) The

7

Commissioner further argues that any error in the ALJ's step three analysis was mended by her RFC analysis, which "articulated her longitudinal assessment of the frequency of Plaintiff's seizures throughout the relevant period, as well as their effects of Plaintiff's physical and mental functioning, satisfying [the requirements of listing 11.02]." (*Id*.)

At the outset, the Court agrees with Plaintiff that the ALJ's articulation of listing 11.02 was lacking. The ALJ did not precisely describe the differences between 11.02's four sub-listings, such as the seizure type and frequency required to meet a given sub-listing. (*See* AR 60.) Further, the ALJ's description arguably collapses 11.02A and B into 11.02C and D and *requires* a marked limitation in one of the five areas of functioning to meet listing 11.02, without noting that under 11.02A and B no such limitation must be found. Still, however, the Court cannot say the ALJ's cursory rule statement or summary findings constituted harmful error in and of themselves. The ALJ specifically cited the correct listing at issue and accurately noted that the listing contemplates both the frequency of seizures and a claimant's physical and cognitive functioning. The ALJ then made the specific finding that Plaintiff had not shown the proper frequency[4] nor a marked effect in his physical and cognitive functioning and thus could not satisfy the listing. Accordingly, the Court will not reverse the ALJ's decision on this ground.

The Court next considers whether the ALJ committed harmful error by making insufficiently detailed findings as to listing 11.02 in step three. Here, the Court agrees with Plaintiff that the ALJ erred in only summarizing—and not describing or analyzing—her listing

---

[4] The Court notes that to the extent the ALJ found Plaintiff could not meet the seizure frequency requirement in 11.02C or D, she *necessarily* must have found Plaintiff could not meet the seizure frequency requirement in 11.02A or B, buttressing the Court's determination of no harmful error, and undercutting Plaintiff's argument the ALJ ignored or did not apply 11.02A or B.

8

11.02 finding in step three. However, the Court notes the well-established principle that an ALJ's step three error may be rendered harmless, and thus not grounds for remand, when other portions of the decision adequately explain a step three finding. *See Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (insufficiently detailed step three finding may be harmless error where ALJ makes detailed findings at other steps that confirm rejection of the listings).

The ALJ made the following relevant findings in other portions of her decision:

- While analyzing whether Plaintiff met the listing requirements for listings 12.04 and 12.06 later in step three, the ALJ undertook a detailed review of four of the five areas of functioning considered by listing 11.02: "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting and managing oneself." The ALJ did not find a "marked limitation" in any of these areas of functioning. (AR 60–61.)

- While analyzing Plaintiff's RFC, the ALJ discussed Plaintiff's testimony that he suffers from three or four partial complex seizures per month and "sometimes has grand mal seizures." The ALJ further acknowledged Plaintiff's statements that it "takes about two days to recover from a seizure. It makes him feel tired and he gets a headache. [And] that he decreases his activity to prevent seizures.... [including taking] two or three naps a day for about an hour." (AR 62.) The ALJ also discussed Plaintiff's father's testimony that Plaintiff has "convulsive seizures every couple of months which tend to wipe him out" and that Plaintiff has "eight to 10" or "three to five" seizures per month, depending on how cluster seizures are counted. (AR 62.)

- However, the ALJ found "the record does not reflect the numbers of seizures as alleged" at the hearing. (AR 63.)

- The ALJ noted Plaintiff was taking oxcarbazepine to control his seizures and that "medications have generally been helpful with no significant side effects." (AR 63 (citing AR 834).) Plaintiff later began taking Depakote and Oxtellar. (AR 65 (citing AR 1141).)

- The ALJ noted that September 2019 treatment records suggested his last seizure before that appointment was a month prior. (AR 63 (citing AR 1033).) Further, the ALJ found that "October 2019 records reflect that the claimant has partial-complex seizures once per month." (AR 63 (citing AR 833, 1039).) The ALJ also found Plaintiff's seizures had "significantly improved" since he moved from Missouri to Colorado. (AR 63 (citing AR 833).)

- The ALJ stated that "December 2020 records reflect that the claimant had had a few seizures since his last visit. He had two seizures in October, one seizure in November, and none in December." (AR 65 (citing AR 1193).)

- The ALJ noted that February 2020 treatment records indicated Plaintiff "had two generalized tonic-clonic seizures" since his last treatment and "continued to have his focal seizures a couple of times per week." (AR 63 (citing AR 840).) Plaintiff's oxcarbazepine dose was increased prior to the February 2020 exam without significant side effects. (*Id.*) Plaintiff "had not had any additional convulsive seizures" since the dosage increase a few days prior to the visit. (*Id.*)

- The ALJ found November 2021 "records reflect that the claimant had been doing a little bit better. He went three months without a seizure which is the longest he had gone without a seizure in quite some time." (AR 65 (citing AR 1141).)

- The ALJ found that "lack of compliance may have been the cause of some of [Plaintiff's] seizures." (AR 64.) "April 2020 records reflect that the claimant had a couple of seizures where he did lose consciousness.... April 2020 records some reports about difficulty with morning medication compliance and he may have missed a morning dose of his oxcarbazepine within 1-2 days of [his latest] seizure. However, his provider said that this was is not fully clear, and that his seizure may have been unprovoked." (AR 64 (citing AR 960).)

- The ALJ also found "some of the seizures have been caused by alcohol use and/or drug use.... August 2020 records reflect that the claimant went to the emergency room with multiple seizures. The record notes that the claimant went out drinking the previous night and woke up feeling hungover. He was given some fluids and sent home." (AR 65 (citing AR 861).) Similarly, the ALJ found that in September 2020, Plaintiff "reported a couple of seizures within the previous few weeks in the setting of one to two bottles of wine, followed by vomiting his medications. His provider noted that since these seizures were likely provoked, and he was hesitant to make changes to his medications. The claimant was warned that excess alcohol can lower the seizure threshold." (AR 65 (citing AR 1080).)

- The ALJ found the opinions of state agency consultants that Plaintiff had the RFC to perform "a full range of work at all exertional levels," so long as he was not exposed to hazards nor climbed ladders, ropes, or scaffolds, persuasive and consistent with the weight of the evidence. (AR 61, 66–67.)

The Court concludes these findings sufficiently explain the ALJ's conclusion as to listing 11.02 at step three. The ALJ described in detail the support on the record for her conclusion that Plaintiff did not meet the frequency requirements of the listing. Further, the ALJ discussed

evidence that some of Plaintiff's past seizures may have been triggered by a failure to adhere to his medication regimen or other outside factors, such as alcohol. Finally, the ALJ undertook a detailed analysis of five areas of functioning in listing 11.02C and D. Accordingly, the ALJ did not commit harmful error by failing to provide a sufficient explanation for her listing 11.02 conclusion in step three.

### b. The ALJ's Weighing of the Evidence at Step Three

Plaintiff next argues that, even if the ALJ provided a sufficient explanation for her step three conclusion, she nevertheless failed to "properly account[ ]" for evidence favorable to Plaintiff in making her decision—specifically with regard to the frequency of Plaintiff's seizures. (Doc. No. 16 at 8.) In other words, Plaintiff contends the ALJ's step three ruling was not supported by substantial evidence.

Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue,* 561 F.3d 1048, 1052 (10th Cir.2009). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). While the ALJ must consider all of the evidence, an ALJ "is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009–1010. Further, although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial evidence." *Zoltanski v. F.A.A.,* 372 F.3d 1195, 1200 (10th Cir. 2004). The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency." *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001).

After review, the Court finds the ALJ's listing 11.02 step three conclusion was supported by substantial evidence. Notably, Plaintiff's argument on this point traces many of the same treatment records addressed by the ALJ in her RFC analysis. For example, Plaintiff notes (1) the October 2019 treatment records finding plaintiff was suffering focal and complex partial seizures monthly (Doc. No. 16 at 8 (citing AR 832)); (2) records stating Plaintiff suffered two grand mal seizures in February 2020 (*Id.* at 9 (citing 844–45)); (3) that Plaintiff went to the emergency room in August 2020 after suffering multiple seizures the day following a night of heavy drinking (*Id.* (citing AR 861–62)); and, (4) that during a December 2020 exam, Plaintiff reported two seizures in October, one seizure in November, and none in December. (*Id.* at 10 (citing AR 1193).)

Plaintiff does point to certain record evidence that was unaddressed by the ALJ. For example, in April 2020, Plaintiff was placed on an M1 psychiatric hold after dealing with seizure-related ringing in his left ear for several days. (Doc. No. 16 at 9 (citing AR 931–33, 944–45, 915–21).) Additionally, though the ALJ correctly noted Plaintiff reported going three months without a seizure during a November 2021 evaluation, the ALJ did not note that this streak had ended October 21, 2021, when Plaintiff suffered a significant grand mal seizure. (*Id.* at 10 (citing AR 1142).)

However, as noted, the question is not whether the ALJ discussed every piece of evidence found in the administrative record. *See Clifton*, 79 F.3d at 1009–1010. The question is whether the ALJ's ultimate determination is properly supported by substantial evidence—which is not a high bar. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). Here,

the answer to that question is, yes. While the record is clear Plaintiff faced an unfortunate ongoing battle with seizures during the relevant period, there is substantial evidence Plaintiff did not suffer a grand mal seizure "once a month for at least 3 consecutive months despite adherence to prescribed treatment" under listing 11.02A, or weekly partial seizures "for at least 3 consecutive months despite adherence to prescribed treatment" under 11.02B.[5] The record is, at most, inconclusive as to whether Plaintiff ever met these frequency requirements during the relevant period. And indeed, most treatment records appear to show that Plaintiff was usually significantly under the requirements. Moreover, there is evidence that at least some of the seizures in question may have been caused in part by improper adherence to medication protocols, and thus potentially outside of 11.02's requirement that seizures occur "despite adherence to prescribed treatment."

In view of the foregoing, the Court finds the ALJ's seizure frequency determination was supported by substantial evidence.

## II.   The ALJ's Evaluation of Plaintiff's Subjective Symptom Evaluation

Finally, Plaintiff argues the ALJ improperly, and without substantial evidence, discounted Plaintiff's testimony regarding his symptoms. (Doc. No. 16 at 13–16.) His argument focuses on his testimony as to the frequency of his seizures, saying, "[h]ad the ALJ found Plaintiff's statements [as to seizure frequency] to be credible, she would have found he met listing 11.02 at step three." (*Id.* at 16.) Plaintiff contends the "ALJ gave the boilerplate recitation

---

[5] Plaintiff does not appear to dispute that the ALJ's conclusions as to listings 11.02C or D were supported by substantial evidence, nor does he appear to challenge her findings as to the relevant five areas of functioning. However, even if Plaintiff did make such a challenge, the Court concludes those determinations are also supported by substantial evidence.

that 'the intensity, persistence, and limiting effects of [Plaintiff's] symptoms' were 'not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision,'" without providing adequate explanation or support. (*Id.* at 14 (quoting AR 63).)

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

Here, the ALJ more than adequately explained her conclusion regarding Plaintiff's subjective symptom testimony. The ALJ appropriately summarized Plaintiff's testimony regarding the frequency of his seizures, specifically finding it was inconsistent with the overall record. (AR 62, 63.) Then, as described above, the ALJ explained her conclusion that Plaintiff's testimony did not align with the evidence on the record, analyzing Plaintiff's treatment history in significant detail. (AR 63–66.) Indeed, as discussed, the Court finds the ALJ's conclusion that the record is inconsistent with Plaintiff's testimony as to seizure frequency *is* supported by substantial evidence, and it will not reverse the decision on these grounds. (*See supra* pg. 11–13.)

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**. The Clerk of Court is directed to close the case.

Dated this 22nd day of March, 2024.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge